BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION | MDL Docket No. 3162 |

**DEFENDANTS' RESPONSE TO
MOVANT'S MOTION FOR TRANSFER**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Defendants Angeion Group LLC, Digital Settlement Technologies LLC, Epiq Systems, Inc., The Huntington National Bank, JND Legal Administration, and Western Alliance Bank (together, "Defendants") hereby respond to Plaintiffs Tyler Baker and Lauren Wolf's ("Movants") Motion to Transfer and Centralize the Related Actions to the United States District Court for the Eastern District of Pennsylvania, or alternatively to the Southern District of New York, for Consolidated or Coordinated Pretrial Proceedings Pursuant to 28 U.S.C. § 1407, Dkt. No. 1 ("Motion").[1]

Defendants agree with Movants that transfer pursuant to 28 U.S.C. § 1407 is warranted. The five putative class action Complaints at issue offer significantly overlapping, often identical allegations, and pursue similar claims against Defendants. The actions, all of which define the relevant putative classes in similar ways, were brought at roughly the same time and are at the same procedural posture, and three of them were brought by the same law firm (Boies Schiller Flexner LLP). Now is also the ideal procedural point for a transfer: no Defendant has answered or moved to dismiss any of the Complaints, and discovery has yet to begin in any of the cases.

---

[1] Defendants Blackhawk Network Holdings, Inc. and Tremendous, LLC have taken no position on the Motion or this Response. Defendant Kroll Settlement Administration LLC filed a separate response. Dkt. No. 21.

1

Where Defendants and Movants part company (to some extent) is with respect to the venue to which the actions should be transferred. Movants brought the *Baker* action in the Eastern District of Pennsylvania and seek consolidation in that forum or, in the alternative, the Southern District of New York. A straightforward application of the factors that this Panel applies in making that determination leaves little doubt that the Southern District of New York—Movants' second choice—is where the putative class actions at issue should be transferred.

*First*, although Philadelphia is a major city, New York, which is served by three major airports and two major train stations, is the most readily accessible city in the United States. *Second*, almost all Defendants have a significant presence in New York, while only one is based in Pennsylvania. That also means relevant witnesses and documents are more likely to be found in New York. *Third*, each of the five Defendants named in all Related Actions agrees that the Southern District of New York is their preferred venue and the two *Baker* Plaintiffs identify it as their second choice. Five Plaintiffs are represented by Boies Schiller, which opted to file one of its cases in the Southern District of New York as well. *Fourth*, this Panel frequently entrusts complex, multidistrict cases like this one to members of the Southern District of New York bench in general and to Judge Castel—who is currently assigned to one of the cases subject to this Motion and has adroitly overseen numerous complex class action litigations—in particular.

Finally, although Movants are silent on other venues, it is important to point out that the forum selection criteria used by this Panel strongly counsel against the Southern District of Florida as a potential venue. The Southern District of Florida does not house any of the parties (other than Plaintiff Roger Tejon), likely witnesses or documents, is far less convenient for the parties (other than Tejon), and lacks the same MDL experience as other candidate venues.

Accordingly, Defendants respectfully request that the Related Actions be transferred to, and consolidated in, the Southern District of New York.

**PROCEDURAL BACKGROUND**

Over a monthlong period beginning in late April, five overlapping putative class actions (the "Related Actions") were filed in four jurisdictions across the United States alleging highly similar claims relating to the administration of class action settlements. These lawsuits name many of the same Defendants, assert many of the same causes of action, and seek the same remedies for the same alleged harm to classes defined in substantially the same ways.

The initial Action—*Baker v. Angeion Group, LLC, et al.*—was filed on April 24, 2025. *See Baker v. Angeion Grp. LLC et al.*, Case No. 2:25-cv-02079-KBH (E.D. Pa.) (Dkt. 1). The two *Whalen* Actions and the *Tejon* Action were filed on May 28 and 29 in three jurisdictions. *See Whalen et al. v. Epiq Sys., Inc. et al.*, Case No: 3:25-cv-04522-JSC (N.D. Cal.) ("*Whalen 1*") (Dkt. 1) ("*Whalen* N.D. Cal. Compl."); *Whalen v. Epiq Sys. Inc. et al.*, Case No. 1:25-cv-04499-PKC (S.D.N.Y) ("*Whalen 2*") (Dkt. 2) ("*Whalen* S.D.N.Y. Compl."); *Tejon v. Epiq Sys., Inc. et al.*, Case No. 1:25-cv-22453-KMW (S.D. Fla.) (Dkt. 1) ("*Tejon* Compl."). Shortly thereafter, the *Rieger* Action was filed, and the initial *Baker* Complaint was amended, adding claims that nearly verbatim tracked claims in the *Whalen 1*, *Whalen 2*, *Tejon*, and *Rieger* cases. *See Rieger v. Epiq Sys., Inc. et al.*, Case No. 3:25-cv-04793-JSC (N.D. Cal.) (Dkt. 1) ("*Rieger* Compl."); *Baker v. Angeion Grp. LLC et al.*, Case No. 2:25-cv-02079-KBH (E.D. Pa.) (Dkt. 27) ("*Baker* FAC"). This flurry of activity resulted in five pending Related Actions spread across four jurisdictions, all involving highly similar Complaints.

The Complaints in all five Related Actions share the same core allegations: that the Defendant administrators and banks participated in a purported conspiracy in which the administrators agreed to use the banks to hold and disburse class action settlements in exchange

for payments generated from the interest those settlement funds earned on the open market.[2] According to the various sets of Plaintiffs, this alleged conduct gives rise to a number of different claims, including violations of the antitrust laws, civil RICO, breach of fiduciary duty, fraud, unjust enrichment, and various other state law causes of action. Each Related Action names Angeion, Epiq, JND, Huntington and Western Alliance as Defendants.[3] To this group, *Rieger* adds Kroll Settlement Administration LLC and *Baker* adds Blackhawk Network Holdings, Inc., Digital Settlement Technologies LLC and Tremendous, LLC.[4]

Given the substantial similarity of the overlapping claims and parties, Defendants strongly and repeatedly encouraged counsel for Plaintiffs—for months—to provide a proposal for consolidation or coordination of the Related Actions that they filed. *See, e.g.*, Jul. 21, 2025 Joint Letter Request to the Honorable P. Kevin Castel in *Whalen v. Epiq Sys., Inc.*, No 1:25-cv-04499-PKC (S.D.N.Y.), Dkt. 39 at 2 ("Plaintiff and Defendants have been engaged in ongoing discussions about how these substantially similar cases should proceed. … [t]he respective plaintiffs at this time have not yet finalized their position about how these cases should proceed").[5] But to no avail. Even though Plaintiffs' counsel expressed an openness to consolidation, weeks more passed without a firm response. On August 8, Boies Schiller finally broke its silence, representing that it was "not planning to move for consolidation," but "remain[ed] open to any coordination that could

---

[2] The operative *Baker* Complaint includes additional claims that Defendant administrators received undisclosed payments from issuers of digital payment cards used to distribute settlement funds to class members.

[3] *See generally Whalen* N.D. Cal. Compl.; *Rieger* Compl.; *Tejon* Compl.; *Whalen* S.D.N.Y. Compl.; and *Baker* FAC.

[4] *See generally Rieger* Compl. and *Baker* FAC.

[5] Defendants convened teleconferences with Boies Schiller (counsel in the two *Whalen* cases and *Tejon*) or Seeger Weiss (counsel in *Baker*) on June 30, July 8, July 9, July 11, July 15, and July 23—only to be told each time that their position would be forthcoming.

4

serve to promote judicial efficiency." One week later, on August 15, *Baker* Plaintiffs filed the Motion.

Promptly after the *Baker* Plaintiffs filed the Motion, Defendants sought stays of the Related Actions pending a decision by this Panel. By August 19, Seeger Weiss had agreed to a stay of the *Baker* action and Boies Schiller had agreed to a stay of the two *Whalen* actions. But when Defendants attempted to confirm Tejon's consent to the same stay, Boies Schiller suddenly went silent, and Defendants were ultimately forced to file a stay motion without Tejon's position given the impending September 5 deadline for their response to the Complaint in that case. Ultimately, the Court granted the stay over Tejon's opposition (which itself was puzzling given Boies Schiller's agreement to a stay in the *Whalen* actions). But counsel's vacillation, subsequent stonewalling, and sudden about-face meant that Defendants were forced to expend significant, unnecessary resources at this early stage—thus underscoring the need for consolidation.

Having initially refused to agree to a stay of the *Rieger* case, prompting Defendants to move for a stay, counsel for Nicole Rieger agreed today to stipulate to stay that action.

To Defendants' knowledge, all parties at least agree in principle that some form of consolidation or coordination would be beneficial. But the parties have not reached a consensus on how and where to consolidate the Related Actions. The Panel routinely makes a transfer decision in such situations and—as explained below—such a transfer is warranted here. *In re: Cast Iron Soil Pipe & Fittings Antitrust Litig.*, 999 F. Supp. 2d 1368 (J.P.M.L. 2014) (transferring related actions where "[a]ll parties support[ed] centralization under Section 1407, but disagree[d] on an appropriate choice for transferee district").

# ARGUMENT

I. **The Situation Presented by these Five Nearly Identical Actions is Precisely Why 28 U.S.C. § 1407 Exists**

Defendants support the *Baker* Plaintiffs' request for transfer of the Related Actions. Pursuant to 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). Here, both factors weigh heavily in favor of transfer and consolidation.[6]

*First*, the factual allegations supporting the claims—and the claims themselves—are substantially similar. Comparing the factual allegations in *Whalen 1*, *Whalen 2*, *Rieger*, and *Tejon* reveals *only* the following differences: the identities of the named Plaintiffs, corresponding pronoun changes, and an extra page of allegations in the *Rieger* Complaint describing Kroll's alleged involvement. *Compare Rieger* Compl. ¶¶ 30-102; *Whalen* N.D. Cal. Compl. ¶¶ 31-102; *Tejon* Compl. ¶¶ 29-100; *Whalen* S.D.N.Y. Compl. ¶¶ 29-100. The other allegations underpinning those four Complaints are exactly the same, and the Panel has repeatedly concluded that transfer is appropriate where, as here, putative class actions assert substantially identical claims and seek identical relief. *See, e.g.*, *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (J.P.M.L. 2022); *see also In re Cap. One 360 Sav. Acct. Int. Fee Litig.*, 737 F. Supp. 3d 1359, 1360 (J.P.M.L. 2024) (centralization appropriate where actions are nationwide class actions asserting similar claims).

---

[6] For avoidance of doubt, Defendants do not concede that any of the requirements for class certification under Rule 23 have been met in any of the putative class actions. Defendants expressly preserve and do not waive any arguments against class certification in the Related Actions.

*Baker* too tells largely the same story and relies on the same general allegations as the other four Related Actions. The only material difference is its inclusion of additional allegations arising from an alleged scheme regarding unused funds from pre-paid digital cards distributed to class members involving three additional defendants. But that one addition—next to dozens of paragraphs that describe the same alleged overarching conspiracy and repeat the same factual allegations as the other four Complaints—does nothing to undermine the appropriateness of consolidation and centralization. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) (Section 1407 "does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of ... differing legal theories is not significant where, as here, the actions still arise from a common factual core") (cleaned up); *see also In re Acetaminophen - ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d 1372, 1374 (J.P.M.L. 2022) ("common factual core in these nearly identical actions far outweighs the plaintiff-specific differences" and "warrant[ed] centralization"). Indeed, by filing the instant Motion, the *Baker* Plaintiffs recognize the overlap between their case and the others, which underscores the point; as did each Plaintiff when agreeing to stipulations that set a unified deadline for Defendants to respond to the Complaints. *See, e.g.*, Jul. 21, 2025 Joint Letter Request to the Honorable P. Kevin Castel in Whalen v. Epiq Sys., Inc., No 1:25-cv-04499-PKC (S.D.N.Y.), Dkt. 39 at 2.

*Second*, transfer for consolidated pretrial proceedings will also serve the convenience of the parties and witnesses and ensure the just and efficient conduct of the Related Actions. While Defendants strongly maintain that the claims lodged against them are meritless, the five virtually identical class actions will almost certainly produce expensive, duplicative, and burdensome discovery (if any of the cases get that far) and elicit potentially conflicting pretrial determinations

and different rulings on class certification should they proceed along separate tracks. The Panel has repeatedly cited these judicial efficiency and fairness factors in centralizing putative class actions. *See, e.g.*, *In re Evolve Bank & Trust Customer Data Security Breach Litig.*, 753 F. Supp. 3d 1377, 1378 (J.P.M.L. 2024) (centralizing multiple class actions to prevent inconsistent pretrial rulings, including with respect to class certification and expert witness issues); *In re AT&T Inc. Customer Data Security Breach* Litigation, 737 F. Supp. 3d 1350, 1351–52 (J.P.M.L. 2024) (same); *In re Passenger Vehicle Replacement Tires Antitrust Litig.*, 737 F. Supp. 3d 1364, 1366 (J.P.M.L. 2024) (transferring overlapping class actions); *see also* Multidistrict Lit Man § 5:24 (noting importance of consistent rulings, "especially with respect to class certification matters").

As Movants correctly point out, the overlapping nature of the broad putative classes in each action makes it all but certain that the parties in the Related Actions will pursue substantially similar and duplicative documents and testimony in discovery. *See* Plaintiffs' Brief in Support of the Motion, Dkt. No. 1-1 at 5–6. Forcing the same witnesses to repeatedly take time off from their jobs to appear for multiple depositions across multiple judicial districts would be disruptive to them, their families, and their employers. The same goes for the parties, who may be forced to produce documents, answer written discovery, draft briefs, and appear for arguments and hearings five times rather than once.[7] In addition, these cases are likely to involve substantial discovery from third-party witnesses, as antitrust cases often involve expansive discovery from nonparty market participants. Transfer and consolidation are the best way to minimize the disruption and cost of discovery for third parties (such as class counsel in underlying settlements at issue), who

---

[7] The highly overlapping nature of the broad putative classes in each action makes it all but certain that they will pursue duplicative discovery. Indeed, certain named plaintiffs in the Related Actions have alleged that they were claimants in some of the same class action settlements so, at a minimum, overlapping and duplicative discovery on those settlements would need to occur in multiple jurisdictions.

8

would otherwise find themselves forced to produce documents and sit for depositions in multiple cases.

The fact that these five cases are all putative antitrust class actions is important. As the Panel has repeatedly recognized, such cases pose unusually complex issues of law and fact and often involve extensive and time-consuming fact and expert discovery. Accordingly, consolidation and centralization are critical tools in preventing the waste of judicial (and party) resources in such cases and ensuring that "justice and efficiency" prevail. *See In re Apple Inc. Smartphone Antitrust Litig.*, 737 F. Supp. 3d 1361, 1363 (J.P.M.L. 2024) (centralization warranted to avoid possibility of inconsistent pretrial rulings, particularly with respect to Daubert issues pertaining to antitrust experts); *see also In re Direct Purchaser Plaintiff Beef Antitrust Litig.*, 609 F. Supp. 3d 1412, 1413–14 (J.P.M.L. 2022) (centralization of direct purchaser actions alleging price fixing conspiracy "at a relatively early stage of discovery and motion practice" would prevent inconsistent pretrial rulings).

Because responsive pleadings have not been filed and discovery has yet to begin in any of the cases, these Related Actions are perfectly positioned for transfer now. And the urgency of consolidation is only heightened given that the putative class definitions across the Related Actions are essentially identical and thus pose a high risk of dueling, overlapping putative class actions racing to inconsistent rulings on class certification or trial.[8]

The risks of inconsistent rulings—and diverging positions in litigation—was underscored by Defendants' recent experience on the simple matter of seeking a stay of the Related Actions

---

[8] The *Rieger*, *Tejon* and both *Whalen* Complaints propose three identical classes and the *Baker* FAC identifies essentially the same three classes albeit in a different order. Class 3 in each Complaint is identical and *Rieger*/*Tejon*/*Whalen* Class 1 and *Baker* Class 2 are also identical. As for *Rieger*/*Tejon*/*Whalen* Class 2, it is defined in a manner nearly identical to *Baker* Class 2, with the only difference being that it is a state-wide class instead of a nation-wide class.

9

pending a ruling from the Panel, as described on page 5, *supra*. Consistent with routine judicial practice granting stays in such circumstances, *Baker* Plaintiffs and Plaintiffs in the two *Whalen* cases agreed to a stay. But the *Tejon* and *Rieger* Plaintiffs refused, even though Tejon himself was represented by the same firm (Boies Schiller) which had agreed to a stay in the *Whalen* cases.[9] As a result, Defendants were forced to expend substantial resources litigating stay motions and preparing motions to dismiss that would be mooted by a consolidated action. It is difficult to conceive of a less efficient manner of proceeding, which is why this is exactly the type of case in which transfer under § 1407 is appropriate. The Panel should reach the same conclusion.

## II. The Southern District of New York is the Most Appropriate Transferee Forum

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses;" (2) the location of "relevant witnesses and evidence;" (3) the support of parties for centralization in the district; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *In re Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). All factors strongly favor the Southern District of New York as the appropriate forum.

---

[9] Remarkably, the involvement of the same firm as counsel of record in three of these litigations did nothing to improve coordination surrounding the stay requests. When Boies Schiller finally responded with Tejon's opposition to the motion, it made representations about the stay to the court in the Southern District of Florida that were flatly inconsistent with its prior representations to the courts in the Southern District of New York and the Northern District of California. *Compare* Joint Letter Request to the Honorable P. Kevin Castel in *Whalen v. Epiq Sys., Inc.*, No 1:25-cv-04499-PKC, Dkt. 57, at 1-3 (representing Plaintiff Whalen "will not be prejudiced by the short stay requested here"), *with* Response to Stay Motion, *Tejon v. Epiq Sys., Inc.*, 25-cv-22453 (S.D. Fla.), Dkt. 58 at 5 (representing the same stay "would be unfairly prejudicial to Plaintiff [Tejon]").

10

A.  *The Southern District of New York is the Most Convenient Forum for the Parties and Likely Witnesses*

In their Motion, *Baker* Plaintiffs contend that the Eastern District of Pennsylvania, based in Philadelphia, is a "convenient and accessible forum" and tout Philadelphia's airport, restaurants, and hotels as evidence of same. What they do not—and cannot—contend is that Philadelphia provides a *more* convenient or accessible forum than the Southern District of New York, based in New York City. As the *Baker* Plaintiffs' own criteria demonstrate, it does not.

The parties and likely relevant witnesses in this case are scattered across the country: many are in New York (more on that below), but others can be found in Arizona, California, Nevada, Ohio, Oregon, Texas, Vermont, Virginia, Wisconsin, Washington, and Washington D.C., among other states. Each is directly connected to New York's three major airports, and many of them (particularly those in the Northeast) to its two smaller airports, train stations, and bus terminals as well. Indeed, even Philadelphians can make the 93-mile trip from the Eastern District of Pennsylvania to the Southern District of New York in less than two hours by bus, train or car. No city in the United States offers the same connectivity as New York, which sees millions of air passengers each year,[10] and no candidate city has as many restaurants or hotel rooms.[11] It is thus unsurprising that the Panel has consistently recognized the Southern District of New York as a "convenient and accessible venue" in situations like this involving nationwide, class action litigations. *See, e.g.*, *In re OpenAI, Inc., Copyright Infringement Litig.*, 776 F. Supp. 3d 1352, 1355–56 (J.P.M.L. 2025); *In re Concrete & Cement Additives Antitrust Litig.*, 730 F. Supp. 3d 1381, 1382 (J.P.M.L. 2024).

---

[10] Port Authority NY NJ, Air, https://www.panynj.gov/airports/en/index.html.

[11] New York City Comptroller Brad Lander, Tourism's Role in New York City's Economy (March 12, 2025), https://comptroller.nyc.gov/reports/tourisms-role-in-new-york-citys-economy/.

B.   *The Southern District of New York is Home to Far More of the Likely Witnesses and Evidence Relevant to the Related Actions*

In discussing the location of relevant witnesses and evidence, the *Baker* Plaintiffs identify only one party—Angeion Group—which has a significant presence in the Eastern District of Pennsylvania. Instead, they tout Philadelphia's geographical "proximity" to the places in which the various Defendants are located or where they maintain a significant presence. But most Defendants are either headquartered in or have major offices in or close to New York City and several Plaintiffs reside there (or close by) as well. Indeed, Baker *himself* lives in Vermont, which is far closer to New York than Philadelphia.

Movants attempt to get around this issue by focusing their discussion on where companies are incorporated, but that is the wrong question. The pertinent issue is where the relevant documents and witnesses are likely to be, and the answer to that is either New York or, if not, in cities for whose residents' journey to New York is easier than travelling to Philadelphia. More specifically:

- **Epiq** maintains its principal place of business in Kansas but has a significant office in New York. Its New York office is one of Epiq's largest locations, the substantial majority of its business records are accessible there, and it houses majorities of its executive and legal solutions team. Based on the allegations in the Related Actions, the individuals likeliest to be witnesses in the Related Actions (and in any MDL) will be employees of non-party Epiq Class Action & Claims Solutions, Inc. ("ECA"). ECA, which has not been named in any of the Related Actions, is a separate, wholly-owned subsidiary of Epiq that (unlike Epiq) administers class and mass action settlements. ECA maintains its principal place of business in Oregon, but has a significant office in New York. ECA's New York office is one of its largest locations, and the substantial majority of its business records are accessible there.

- **Kroll Settlement Administration LLC** is headquartered in New York and many of its relevant witnesses and documents are located there. Dkt. No. 21.

- Among the venues where Plaintiffs filed Complaints, New York has the largest **JND Legal Administration** employee presence—nearly triple the combined headcount of all other candidate venues—and ranks second nationwide behind only JND's Washington principal place of business. The JND employees working in New York include two of its three Founders, who are also both Executive Managing Directors of JND.

- **Huntington** is headquartered in Ohio. Its National Settlements Group, which is responsible for Huntington's business at issue in these lawsuits, operates out of the Northeast, with relevant personnel in New York and Pennsylvania. Huntington recognizes the Southern District of New York as the most convenient forum for itself and other parties and will make its witnesses available in New York.

- **Western Alliance** is headquartered in Arizona and maintains a large presence in California. Western Alliance maintains an office and has employees in New York and finds New York to be a more convenient forum for its likely witnesses than Philadelphia, where it has no significant presence.

- **Digital Settlement Technologies LLC** is a direct subsidiary of Western Alliance and has no employees in Florida, New York, or Pennsylvania, but would find travel to New York more convenient.

- **Angeion** is headquartered outside Philadelphia, which, as discussed above, is a short distance from New York. It also maintains an office in New York and most of its employees are located in the mid-Atlantic region, including New York, New Jersey, Pennsylvania, and Delaware. Its remaining employees are spread across 29 states and Canada, making New York a more convenient option.

As for Plaintiffs, they too collectively have more contacts with the Southern District of New York than the Eastern District of Pennsylvania. *None* of the named Plaintiffs in any of the Related Actions (including Baker, who is discussed above) is a citizen of Pennsylvania. And the lead Plaintiff in both *Whalen* actions—Mary Jane Whalen—is a citizen of New York. *See Whalen* N.D. Cal. Compl. ¶ 21; *Whalen* S.D.N.Y. Compl. ¶ 21.

### C. *The Majority of Parties Support Consolidation in the Southern District of New York*

Of the sixteen parties across the Actions, eight have advocated for transfer and consolidation of the Actions to the Southern District of New York and five more are represented by counsel that decided to pursue claims in that District. Every one of the five Defendant entities named in all Related Actions submits that the Southern District of New York is the *most* appropriate transferee district. Further, the two *Baker* Plaintiffs themselves have recognized that the Southern District of New York is an appropriate venue—a conclusion underscored by their

13

Motion's recognition that many Defendants maintain a significant corporate presence in New York City. *See* Motion at 1, 7-8. And finally, although she has not yet weighed in on the question, Plaintiff Whalen filed one of her two lawsuits in the Southern District of New York and is a citizen of New York, meaning she would be hard pressed to object to the Southern District of New York as an appropriate forum for transfer and centralization.

> **D.** ***The Experience of the Transferee District in Navigating the Nuances of Complex Multidistrict Litigation Supports Centralization in the Southern District of New York***

"[T]he experience, skill, and caseloads of [the] available judges" also strongly support centralization in the Southern District of New York. *See* Manual for Complex Litigation § 20.131. There is no question that the Southern District of New York has proven adept at handling complex multidistrict litigations and, in particular, antitrust class actions. *See In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1380 (J.P.M.L. 2021); *In re: Set-Top Cable Television Box Antitrust Litig.*, 589 F. Supp. 2d 1379, 1380 (J.P.M.L. 2008).

In addition, Judge Castel, an "experienced transferee judge" before whom one of the Related Actions is pending, is uniquely well-positioned to manage a complex MDL of this type. The Panel has previously turned to Judge Castel in situations involving complicated antitrust class action litigation. Just three years ago, in deciding to transfer the *Digital Advertising Antitrust Litigation* to his court, the Panel noted:

> "[w]e believe that assignment of this MDL to an experienced transferee judge is needed, considering the complexity of the factual and legal issues, the anticipated breadth of third-party discovery, and the parties' concerns over case management efficiencies in litigation of this scope. Judge P. Kevin Castel, to whom we assign this litigation, has presided over three MDLs, and has the willingness and ability to manage this litigation efficiently. We are confident he will steer this litigation on a prudent course."

555 F. Supp. 3d at 1380. This history strongly supports the conclusion that the Southern District of New York is the most appropriate transferee forum.

By contrast, Movants' suggestion that a court's lack of MDL experience weighs in favor of transfer to that court finds no support in the case law they cite. The Panel assigned *In re Suboxone (Buprenophine/Naloxone) Film Marketing, Sale Practices, & Products Liability Litigation* to the transferee judge in question principally because it was far more efficient to do so: the parties agreed on the transferee venue and two of the actions had already been transferred to his court. 717 F. Supp. 3d 1376, 1377 (J.P.M.L. 2024). As for *In re Crop Inputs Antitrust Litigation*, the Panel's reasoning again hinged more on the parties' preferred venue than the judge's lack of experience in overseeing MDLs. 543 F. Supp. 3d 1381 (J.P.M.L. 2021).

**III.     The Southern District of Florida is Not an Appropriate Transferee Forum**

As discussed above, two of the Related Actions are pending in the Northern District of California, one in the Southern District of New York, one in the Eastern District of Pennsylvania, and, finally, one in the Southern District of Florida. The selection criteria used by the Panel demonstrates that the Southern District of Florida trails the rest of the forum candidates by a wide margin. None of the parties (other than plaintiff Tejon) are based in Miami or have significant operations there. None of the likely relevant witnesses or documents are located there. Miami is not a convenient location for the parties and likely witnesses, and it is much more difficult to get to than New York for those individuals who reside anywhere else in the country, particularly the Midwest and the West Coast (the trip from Seattle, where JND is based, to Miami takes around nine hours, and California to Miami is not much better). And although Judge Williams (to whom the *Tejon* matter was assigned) is a highly respected jurist, the district does not see nearly as many cases of this complex nature as other candidate venues and thus, respectfully, has less familiarity and expertise to administer this complex litigation compared to those districts.

15

\*\*\*

For the reasons set forth above, Defendants respectfully request that the Panel grant the motion for transfer to facilitate further coordination and consolidation, under 28 U.S.C. § 1407, and transfer the Related Actions to the United States District Court for the Southern District of New York.

Dated: September 5, 2025

 /s/ J. Gordon Cooney Jr.
MORGAN, LEWIS & BOCKIUS LLP
J. Gordon Cooney Jr.
2222 Market Street
Philadelphia, PA 19103-3007
Ph: (215) 963-5000
Fax: (215) 963-5001
Gordon.Cooney@morganlewis.com
*Counsel for Angeion Group LLC*

 /s/ Amanda L. Groves
WINSTON & STRAWN LLP
Amanda L. Groves
333 South Grand Avenue
Los Angeles, CA 90071
Ph: (213) 615-1700
Fax: (213) 615-1750
AGroves@winston.com

*Counsel for The Huntington National Bank*

 /s/ Sonal N. Mehta
WILMER CUTLER PICKERING
    HALE AND DORR LLP
Sonal N. Mehta
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Ph: (650) 858-6000
Fax: (650) 858-6100
Sonal.Mehta@wilmerhale.com

*Counsel for Epiq Systems, Inc.*

 /s/ Brendan P. Cullen
SULLIVAN & CROMWELL LLP
Brendan P. Cullen
550 Hamilton Avenue
Palo Alto, California 94301
Ph: (650) 461-5600
Fax: (650) 461-5700
CullenB@sullcrom.com

*Counsel for Western Alliance Bank and Digital Settlement Technologies LLC*

 /s/ Sozi Tulante
DECHERT LLP
Sozi Tulante
2929 Arch Street
Philadelphia, PA 19104
Ph: (215) 994-2020
Fax: (215) 994-2222
Sozi.Tulante@dechert.com

*Counsel for JND Legal Administration*