BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION

MDL Docket No. 3162

### *WHALEN* AND *TEJON* PLAINTIFFS' JOINT MEMORANDUM IN QUALIFIED SUPPORT OF *BAKER* PLAINTIFFS' MOTION FOR CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, the Plaintiffs in *Whalen v. Epiq Systems, Inc*., Case No. 3:25-cv-4522-JSC (N.D. Cal.); *Whalen v. Epiq Systems Inc.*, Case No. 1:25-cv-4499-PKC (S.D.N.Y.); and *Tejon v. Epiq Systems, Inc.*, Case No. 1:25-cv-22453-KMW (S.D. Fla.) (collectively, the "Plaintiffs") respectfully submit this memorandum of law in qualified support of the *Baker v. Angeion Group LLC et al*, 2:25-cv-02079-KBH (E.D. Pa.) Plaintiffs' ("*Baker* Plaintiffs") motion for transfer and coordination for pretrial purposes (the "Motion").

### INTRODUCTION

The *Whalen* and *Tejon* Plaintiffs support the *Baker* Plaintiffs' Motion on a qualified basis. The *Whalen* and *Tejon* Plaintiffs believe that consolidation is warranted, but only with respect to the claims similar to the *Whalen* and *Tejon* claims, all of which arise from the *Whalen* and *Tejon* Plaintiffs' first-filed complaints. The balance of claims alleged by the *Baker* Plaintiffs are dissimilar and therefore should not be consolidated.[1] The consolidated claims should be

---

[1] MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004) ("Occasionally, only certain claims in an action are related to multidistrict proceedings . . . section 1407(a) [] empowers the Panel to accomplish 'partial' transfer by (1) transferring an action in its entirety to the transferee district, and (2) simultaneously remanding to the transferor district any claims for which transfer was not deemed appropriate.").

1

consolidated in the Northern District Court of California, where these claims were first filed and where there are more class action settlements implicated by these claims than in any other District.

Within the last five months, five class action lawsuits[2] were filed against Defendants Angeion Group LLC, Blackhawk Network Holdings, Inc., Digital Settlement Technologies LLC, Epiq Systems, Inc., JND Legal Administration, Kroll Settlement Administration LLC, Huntington National Bank, Tremendous LLC and Western Alliance Bank (the "Class Defendants").[3] These cases, each arising from the same or similar allegations, were filed in four different districts (Northern District of California, Southern District of Florida, Southern District of New York, and Eastern District of Pennsylvania). The *Whalen* Plaintiffs were the first to file suit against Huntington Bank and Western Alliance Bank (the "Bank Defendants") on May 28, 2025, for engaging in an anticompetitive scheme, breaching contracts, and breaching their fiduciary duties to distribute illegal kickbacks and suppress payouts in class actions. The *Tejon* Plaintiffs filed one day later on May 29, 2025. The *Baker* Plaintiffs, who filed their initial complaint based on different factual allegations, different legal theories, and different defendants, amended their

---

[2] The cases are as follows: *Whalen, et al., v. Epiq Systems, Inc., et al.*, No. 3:25-cv-4522 (N.D. Cal., filed May 28, 2025); *Whalen v. Epiq Systems Inc., et al.*, No. 25-cv-4499 (S.D.N.Y., filed May 29, 2025); *Tejon v. Epiq Systems, Inc., et al.*, No. 25-cv-22453 (S.D. Fla., filed May 29, 2025); *Rieger v. Epiq Systems, Inc., et al.*, No. 3:25-cv-4793 (N.D. Cal., filed June 5, 2025) and *Baker v. Angeion Group LLC, et al.*, No. 25-cv-02079 (E.D. Pa., amended complaint filed June 13, 2025) (collectively, the "Related Class Actions"). Reference to Related Class Actions is intended to only include claims common across all five class actions and excludes the *Baker* Plaintiffs' original claims.

[3] Presently, the defendants common across all actions are Epiq Systems, Angeion Group, JND Legal Administration, Huntington National Bank, and Western Alliance Bank. *Reiger v. Epiq Systems et al.* brings additional claims against Kroll Settlement Administration and *Baker v. Angeion Group LLC* brings additional claims against Kroll Settlement Administration, Tremendous LLC, Blackhawk Network Holdings, and Digital Settlement Technologies.

complaint on June 13, 2025, and added for the first time the *Whalen/Tejon* claims, the *Whalen/Tejon* legal theories, and the *Whalen/Tejon* Bank Defendants.

Other than the original *Baker* complaint, each of the other complaints allege that the Defendants participated in a manipulative and deceptive scheme with the Bank Defendants to obtain millions of dollars in undisclosed compensation to class action administrators, for serving as the court-approved settlement administrators in hundreds, if not thousands, of class action lawsuits across the United States. And other than the original *Baker* complaint, each of the actions alleged the same or similar claims, including violation of Section 1 of the Sherman Act, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), §§ 1962(C) 1962(D) and 1964(C), common law fraud, breach of implied contract, breach of fiduciary duties, negligence, negligent misrepresentation, conspiracy, aiding and abetting, and unjust enrichment, for conspiring with the Bank Defendants to distribute illegal kickbacks and maintaining anticompetitive rates of payout to class action members in class action settlements.

The *Baker* claims are different. *Baker* was originally a case about digital payment kickbacks from credit card companies to mass and class action administrators, and none of the Bank Defendants were sued. *See* Exh. A (*Baker* complaint originally filed on April 24, 2025). Notably, the *Baker* complaint was about what Defendants received from mass and class action settlement credit and digital cards that were not cashed (i.e., "breakage"), and not about an anticompetitive scheme by the Bank Defendants to suppress class action payouts. *Id.*

If the panel is agreeable to consolidating the *Whalen* and *Tejon* cases, the Plaintiffs request that the panel consolidate and transfer the claims to the Northern District of California. The Plaintiffs' position is that the Northern District of California is the most appropriate forum for pre-trial consolidated coordination. Currently, two of the five related class actions, including the first-

filed action, are being litigated before Judge Jacqueline Scott Corley in the Northern District of California. Additionally, several of the parties are domiciled and/or have their principal place of business in California and neighboring states.

Finally, Defendants' wrongful conduct arises from its abuse of their court-appointed power in administrating class action settlements. California generally, and the Northern District of California specifically, has been the forum that has approved the largest portion of class action settlements. This is also true of the class actions at issue in this litigation, with the Northern District of California having the most.[4] Therefore, the Northern District of California has a continuing interest in the fair and just administration of settlements it has approved and is particularly suited as the transferee court to preside over all of these cases.

## BACKGROUND

The *Baker* Plaintiffs' Motion has provided the panel with a mostly accurate and succinct background of these cases. *See* Dkt. No. 1. Plaintiffs incorporate the factual allegations contained in the *Baker* Plaintiffs' Background section of their Motion herein.

## ARGUMENT

**I.    Centralization of the Related Class Actions is Appropriate**

Transfer for coordinated or consolidated pretrial proceedings is appropriate under 28 U.S.C. § 1407(a) when civil actions pending in different districts involve "one or more common questions of fact." The Judicial Panel on Multidistrict Litigation must also determine that such a transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* The purpose of transfer is to "eliminate duplication in discovery,

---

[4] *See Whalen, et al., v. Epiq Systems, Inc., et al.*, No. 3:25-cv-4522 (N.D. Cal., May 28, 2025); *Rieger v. Epiq Systems, Inc., et al.*, No. 3:25-cv-4793 (N.D. Cal., June 5, 2025).

avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.131 (2004). In this case, all present factors favor consolidation.

In so far as the *Baker* complaint was amended to include claims similar to the *Whalen* and *Tejon* claims, the *Whalen* and *Tejon* Plaintiffs welcome working with the *Baker* Plaintiffs.[5] However, for the benefit of the class in future proceedings, the *Baker* claims on renumerations to class action administrators from payment breakage, which the *Baker* Plaintiffs alleged in their original complaint, should not be consolidated with the *Whalen* and *Tejon* cases, because of the differences between the claims. *See In re: Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1371 (J.P.M.L. 2009) (ordering centralization of all cases while also remanding subset of claims unrelated claims); *In re: Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 560 F. Supp. 2d 1362, 1364 (J.P.M.L. 2008). ("Accordingly, plaintiff's claims relating to the Davol Fixation device should be separated and simultaneously remanded to the Eastern District of Louisiana."); *In re Aredia & Zometa Prods. Liab. Litig.*, 429 F. Supp. 2d 1371, 1373 (J.P.M.L. 2006) ("[T]he Panel is persuaded that claims against Merck . . . do not share sufficient questions of fact with the claims against Novartis in those actions to warrant inclusion in the MDL–1760 proceedings.").

Accordingly, the Panel should centralize at least four of the five related class actions to the Northern District of California for coordinated or consolidated pretrial proceedings due to the reasons set forth below.

### A. The Related Class Actions Involve Common Questions of Fact.

---

[5] For example, the *Baker* Plaintiffs may sever their claims for Bank Defendants' kickbacks and anticompetitive schemes, or join the *Whalen* and *Tejon* cases with counsel's agreement.

5

Here, the Related Class Actions are alleged to involve one or more common questions of fact because they assert nearly identical factual allegations—namely, that the Defendants participated in a manipulative and deceptive scheme to obtain millions of dollars in undisclosed compensation for serving as the court-approved settlement administrators in hundreds, if not thousands, of class action lawsuits across the United States. Moreover, each of the Related Class Actions assert the same or similar claims, including violation of Section 1 of the Sherman Act, violation of RICO, §§ 1962(C) 1962(D) and 1964(C), common law fraud, breach of implied contract, breach of fiduciary duties, negligence, negligent misrepresentation, conspiracy, aiding and abetting, and unjust enrichment.

Although the legal causes of action vary slightly, "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). Instead, transfer is appropriate when "actions share 'one or more' common issues of fact." *In re Angiodynamics, Inc.*, 2024 U.S. Dist. LEXIS 182258, at *3 (J.P.M.L. Oct. 3, 2024) (citing *id.*).

*In re Capital One 360 Sav. Acct. Int. Fee Litig.* is instructive. There, the Panel determined that transfer was appropriate when all plaintiffs made similar factual allegations against the defendant. 2024 U.S. Dist. LEXIS 102143, at *1–3 (J.P.M.L. June 7, 2024). The Panel further held that common questions of fact exist among related actions when plaintiffs assert similar causes of action. Specifically, the Panel noted, "All actions are putative nationwide or statewide class actions . . . and all plaintiffs assert similar claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violation of state consumer protection laws." *Id*. at *2. Given these circumstances, the Panel concluded that transfer was warranted.

Here, as in *In re Capital One*, plaintiffs in the Related Class Actions make similar factual allegations against identical defendants. Specifically, they assert that defendants "engaged in a deceptive and anticompetitive scheme to reap hundreds of millions of dollars in undisclosed kickbacks and compensation . . . while increasing the costs and depressing the payouts on thousands of class actions." *See, e.g.*, Class Action Complaint, *Tejon v. Epiq Systems, Inc., et al.*, No. 1:25-cv-22453 (S.D. Fla. May 29, 2025), Dkt. No. 1, at ¶ 12 ("*Tejon* Complaint"). Plaintiffs also unanimously allege that these actions "involve[ ] questions of law and fact common to" the proposed classes, including:

1. Whether Defendants were fiduciaries with respect to Plaintiff and the Classes, and whether Defendants breached their duties.

2. Whether Defendants engaged in fraud by omission.

3. Whether Defendants were engaged in an anticompetitive scheme, in violation of Section 1 of the Sherman Act, 15 U.S.C. §§ 1-7.

4. Whether Defendants violated the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968.

5. Whether Defendants breached their contracts for services.

6. Whether Defendants were unjustly enriched by the scheme of undisclosed renumeration, incentives, and compensation.

7. Whether Plaintiff and Class members are entitled to damages as a result of Defendants' wrongful conduct, including but not limited to restitution and/or disgorgement.

*Tejon* Complaint at ¶ 106.

The Plaintiffs allege similar causes of action and claim to be similarly situated individuals. *In re Air W., Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974) ("Indeed, when two or more

complaints assert comparable allegations against identical defendants based upon similar transactions and events, common factual questions are presumed."). For example, all Plaintiffs allege violations of both the Sherman Act and RICO, among others. Moreover, they all purport to represent individuals who "received class and mass action settlement disbursements from Defendants" but were not made aware of the "kickback scheme perpetuated by the Defendants" to "depress[ ] payouts substantially in class actions in the United States," including for plaintiffs. *Tejon* Complaint at ¶¶ 16, 18. Because the Plaintiffs in the Related Class Actions raise common factual allegations, assert similar causes of actions, and purport to represent similarly situated groups of consumers, consolidation of the Related Class Actions is appropriate.

### B. Transfer Will Serve the Convenience of the Parties and Witnesses and Will Promote Just and Efficient Conduct of This Litigation.

Coordination of all the Related Class Actions for pretrial proceedings will serve the convenience of the parties and witnesses while promoting the just and efficient conduct of this litigation. Transfer will eliminate the risk of conflicting rulings and duplicative discovery, conserving the resources of the parties, witnesses, and the judiciary. *Uber Techs., Inc. v. United States Jud. Panel on Multidistrict Litig.*, 131 F.4th 661, 671 (9th Cir. 2025) (finding transfer appropriate for the "[1] eliminat[ion of] duplication in discovery, [2] avoid[ance of] conflicting rulings and schedules, [3] reduc[tion of] litigation costs, and [4] [conservation of] the time and effort of the parties, the attorneys, the witnesses, and the courts").

   *i. Transfer will eliminate the risk of conflicting rulings.*

The common questions of fact alleged across the Related Class Actions make similar pretrial issues inevitable. To "eliminate any possibility of conflicting class[es] and other pretrial

rulings," the Panel has recognized that transfer of each action "is necessary" in similar scenarios. *In re "Fine Paper" Antitrust Litig.*, 453 F. Supp. 118, 121 (J.P.M.L. 1978).[6]

The reasoning in *In re Republic Nat'l-Realty Equities Sec. Litig.* underscores this necessity. There, the Panel emphasized that assigning class action questions to a single judge is most effective—particularly in cases involving overlapping proposed classes. 382 F. Supp. 1403 (J.P.M.L. 1974). The Panel held that when a class of plaintiffs falls "within the boundaries" of classes in other actions "***it is necessary to have all class action questions resolved by a single judge*** in order to eliminate the possibility of conflicting class determinations and achieve the most expeditious method of organizing the class or classes and any necessary subclasses." *Id.* at 1406 (emphasis added).

Similarly, in the present matter, the proposed classes in the Related Class Actions "fall within the boundaries" of one another. *Id.* Centralizing class action determinations before a single judge will ensure consistent certification rulings and eliminate the risk of conflicting rulings or duplicative adjudications. Because the Related Class Actions involve nationwide classes, potential conflicts and inconsistent rulings, including those regarding class certification, are unavoidable without transfer. *In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, 148 F. Supp. 3d 1358, 1359 (J.P.M.L. 2015) ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary."); *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1376 (J.P.M.L. 2012) (holding same).

---

[6] In recognition of this risk, the four trial courts have already stayed the litigation for four of the five Related Class Actions pending this Panel's ruling on the *Baker* plaintiffs' Motion.

These challenges render transfer and coordination indispensable. No alternative can achieve uniformity in rulings and prevent duplicative litigation. Centralizing pretrial proceedings before one judge in a single district is the optimal method for "organizing the class or classes and any necessary subclasses" and ensuring congruency of legal obligations across the Related Class Actions. *In re Republic Nat'l-Realty Equities Sec. Litig.*, 382 F. Supp. at 1406.

>     ii. Transfer will eliminate the risk of duplicative discovery.

There will be significant overlap in discovery across the cases. As such, coordinating the Related Class Actions will eliminate duplicative efforts. *In re Future Motion, Inc. Prods. Liab. Litig.*, 709 F. Supp. 3d 1394, 1396 (J.P.M.L. 2023) ("With respect to the actions in which discovery remains, centralization will allow for coordination and elimination of duplicative discovery and motion practice."). Additionally, the fact that all the Related Class Actions remain in the early stages of litigation further reduces the risk of duplicative discovery with transfer and consolidation. *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, 717 F. Supp. 3d 1357, 1359 (J.P.M.L. 2024) ("Given . . . the early stage of the cases . . . centralization likely will avoid duplicative discovery and other pretrial proceedings, as well as prevent conflicting pretrial rulings, particularly with respect to evidentiary issues and class certification").

In *In re Baby Food Mktg.*, the Panel held that when discovery overlap is likely, centralization eliminates duplicative efforts. 730 F. Supp. 3d 1371 (J.P.M.L. 2024). The Panel found that overlap in discovery was probable when the related cases shared common questions of fact. *Id.* at 1372–73 ("There likely will be overlap in the discovery as to the defendants. . . . Common expert discovery, as to both plaintiffs and defendants, also is probable. Centralization will facilitate a uniform and efficient pretrial approach to this litigation, eliminate duplicative discovery, prevent inconsistent rulings on expert testimony and other pretrial issues, and conserve the resources of the parties, their counsel, and the judiciary.").

Here, the numerous common questions of fact across the Related Class Actions make overlapping discovery inevitable. The Related Class Actions allege nearly identical complex facts, which likely will lead to similar interrogatories, discovery requests, and deposition questions for both plaintiffs and defendants. Centralization and coordination will "facilitate a uniform and efficient pretrial approach to this litigation" and "eliminate duplicative discovery." *Id*. at 1373.

Furthermore, because the Related Class Actions are still in the early stages of litigation and discovery has not yet begun (or is just beginning), coordination at this stage is ideal. *See In re Allianz Life Ins. Co. of N. Am. Deferred Annuity Mktg. & Sales Prac. Litig*., 517 F. Supp. 2d 1364, 1365 (J.P.M.L. 2007) (denying transfer and noting that "four of the five actions in this docket are at a significantly advanced stage").

> iii. *Informal coordination is impracticable, and transfer will conserve the resources of the parties, witnesses, and judiciary.*

Informal coordination is impracticable given the complexity of the cases. These nationwide class actions involve complex factual questions—including antitrust issues and RICO. *In re Range View Mgmt., LLC Tel. Consumer Prot. ACT (TCPA) Litig*., 753 F. Supp. 3d 1375, 1376 (J.P.M.L. 2024) (noting that the complexity of the "common factual issues" is a factor considered by the Panel).

This Panel has repeatedly determined the relative complexity of discovery in antitrust cases sufficient to foreclose the possibility of informal coordination. *In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig*., 412 F. Supp. 3d 1344, 1346 (J.P.M.L. 2019) (finding "common factual issues" regarding defendants anticompetitive conduct "appear[ed] to be complex, and likely w[ould] require significant discovery."); *In re Zetia (Ezetimibe) Antitrust Litig.*, 325 F. Supp. 3d 1369, 1370 (J.P.M.L. 2018) (finding "factual issues arising from allegations that defendants engaged in an unlawful [anticompetitive] scheme" were sufficiently complex to

11

warrant centralization); *In re Broiler Chicken Grower Antitrust Litig.,* 509 F. Supp. 3d 1359, 1360 (J.P.M.L. 2020) (granting centralizing of four antitrust cases); *In re Nat'l Football League's "Sunday Ticket" Antitrust Litig.*, 148 F. Supp. 3d at 1359 ("These actions share complex factual questions arising out of allegations that the NFL and DIRECTV have entered into anticompetitive agreements . . . in violation of federal and state antitrust law."); *In re: Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d at 1375 ("The Panel has, in the past, centralized antitrust cases involving allegations of concerted anticompetitive activity in the insurance market.").

*In re Broiler Chicken Grower Antitrust Litig.*, is instructive on the relationship between the number of actions and feasibility of coordination when dealing with overlapping nationwide class actions with common complex factual questions. 509 F. Supp. 3d 1359 (J.P.M.L. 2020). *In re Broiler Chicken* involved four nationwide class actions with defendants opposing centralization. Two years prior, plaintiffs sought centralization with defendants' support, however, the Panel denied the motion because at that time, it only involved two actions "brought by the same plaintiffs against different defendants," and thus, "informal cooperation and coordination" was a "feasible and preferable alternative to centralization." *Id.* at 1630. Two years later, upon a new motion, the Panel ruled in favor of centralization as "informal coordination and cooperation [was] no longer practicable to manage th[e] litigation," because of the "increased number of involved parties, counsel, and courts." *Id.*

Informal coordination, which may have been possible at the outset, is now unrealistic here. There are currently five actions pending across multiple districts with, covering thousands of class action settlements and millions of class members, three different sets of plaintiffs' counsel, and nine different defendants, each with their own counsel. *In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381 (J.P.M.L. 2013) ("With an estimated 2.4

million affected customers and stores in five states, additional tag-along actions also may be filed in this litigation. Considering all these factors, we conclude that centralization is most appropriate now."). While plaintiffs attempted to coordinate early on, they no longer have the ability to or have the "willingness to informally coordinate." *In re Lens.com Mktg. & Sales Pracs. Litig.*, 776 F. Supp. 3d 1362, 1363–64 (J.P.M.L. 2025).[7]

The Panel also considers geographic proximity when assessing the likelihood for informal coordination. *In re Range View Mgmt., LLC Tel. Consumer Prot. ACT (TCPA) Litig.*, 753 F. Supp. 3d at 1376 (holding that informal coordination is more practicable when the related actions are pending in adjacent districts). The Related Class Actions are pending in courts spanning from coast to coast, including Florida, New York, and California. Moreover, the high likelihood of additional tag along actions brought by different counsel further undermines the prospect of effective informal coordination.

Consolidation and the avoidance of duplicative discovery, motion practice, and other pretrial proceedings will ensure that resources are used effectively. Without centralization, the parties and witnesses would face multiple depositions and repetitive discovery requests on largely identical topics. Similarly, duplicative motions on discovery disputes, dispositive motions, and class certification issues would unnecessarily consume judicial resources. Not only does resolving these claims demand substantial judicial time and expertise, but the complexity of the issues also

---

[7] Notably, Plaintiffs already disagree on the appropriate forum for consolidation and whether the litigation should be stayed pending the Panel's ruling. *See In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d 1359, 1362–63 (J.P.M.L. 2020) ("The parties also seem to disagree about how to accomplish such coordination; in fact, one effort to streamline the litigation – intra-district reassignment to a single judge in the Northern District of Illinois cases – was opposed by Society and some plaintiffs."). The complexity of these claims and the underlying class settlements introduce unique jurisdictional issues that will only deepen those divisions.

creates a strong likelihood for conflicting rulings. Conflicting rulings, if they arise, would further burden the judiciary with the need to resolve inconsistent legal obligations.

As noted above, all the Related Class Actions are in the early stages of litigation. *See In re Allianz Life Ins. Co. of N. Am. Deferred Annuity Mktg. & Sales Prac. Litig.*, 517 F. Supp. 2d at 1365. Coordinating these actions *now* will maximize pretrial efficiency, eliminate redundancy, and conserve the resources of all those involved.

**II.     The Northern District of California is the Appropriate Forum for Centralization**

When considering which district to transfer related matters, the Panel has considered factors such as where the actions are pending, the location of the first-filed action, the parties' residence or principal place of business, where the conduct at issue took place, where the relevant evidence and witnesses may be found, and the transferee court's experience and familiarity with the issues. *In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F. Supp. 969, 975 (J.P.M.L. 1979); *In re Sterling Fin. Corp. Sec. Litig.*, 528 F. Supp. 2d 1353, 1354 (J.P.M.L. 2007); *In re Genentech Herceptin (trastuzumab) Mktg. & Sales Pracs. Litig.*, 178 F. Supp. 3d 1374, 1376 (J.P.M.L. 2016); *In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, 492 F. Supp. 3d at 1363. All of these factors point to the Northern District of California as being the most appropriate transferee district for pretrial proceedings.

***First***, the conduct at issue, the administration of class action settlements, primarily took place in the Northern District of California. Therefore, the Northern District of California is "the logical center of gravity for this litigation." *In re Church of Jesus Christ of Latter-Day Saints Tithing Litig.*, 730 F. Supp. 3d 1357, 1359 (J.P.M.L. 2024). The Northern District of California has consistently been the district with the largest percentage of class action settlement approvals. In 2023, the Northern District of California approved 33% of all federal settlements, approving

more than double the next most numerous district.[8] Therefore, the Northern District of California has a strong interest in ensuring that the settlements it has approved are being administered justly and fairly. *In re Dicamba Herbicides Litig.*, 289 F. Supp. 3d 1345, 1347 (J.P.M.L. 2018) (finding district where "relevant activities" took place to be appropriate for centralization).

Moreover, several of the underlying class actions identified by the named plaintiffs across the Related Class Actions were approved in the Northern District of California. More than any other district. Indeed, even when the *Baker* Plaintiffs amended their complaint to add the *Whalen* and *Tejon*-claims, both named plaintiffs (*Baker* and *Wolf*) alleged that they were class members of settlements for which Defendants served as the settlement administrators approved by the Northern District of California. *See* Amended Compl., *Baker v. Angeion Group LLC, et al.*, No. 25-cv-02079 (E.D. Pa., April 24, 2025), Dkt No. 27, ¶¶ 28-29 (citing *Lundy v. Meta Platforms, Inc.*, Case No. 18-cv-6793-JD (N.D. Cal.) and *Lithium-Ion Batteries Antitrust Litigation*, Case No. 13-MD-02420-YGR (N.D. Cal.)).[9] The Court's final approval order in *Lundy v. Meta*, one the settlements the *Baker* Plaintiffs reference in their complaint, held that it "reserve[d] jurisdiction over the subject matter and each Party to the Settlement with respect to the administration, interpretation, and implementation of the Settlement for all purposes, including . . . resolution of any disputes that may arise relating to the implementation of the Settlement." *Lundy v. Meta Platforms, Inc.*, Case No. 18-cv-6793-JD (N.D. Cal. Mar. 11, 2024) [Dkt No. 222]. The same is true for *Lithium-Ion Batteries Antitrust Litigation*, Case No. 13-MD-02420-YGR (N.D. Cal.) ("[T]his Court hereby

---

[8] *See* BROADRIDGE FINANCIAL SOLUTIONS, 2023 GLOBAL CLASS ACTION ANNUAL REPORT (2023) (available at *https://www.broadridge.com/report/wealth-management/2023-global-class-action-annual-report*).

[9] *See also In re: Yahoo! Inc. Customer Data Security Breach Litigation*, Case No. 16-md-02752-LHK (N.D. Cal.).

15

retains continuing jurisdiction over: (a) implementation of the settlement agreement and any distribution to settlement class members pursuant to further orders of this Court... "). By centralizing all similar cases in Northern California, the panel has the opportunity to maximize judicial efficiency and economy now – and consolidation in Northern California would cause the least amount of friction given the total number of class settlements already there.

*Second*, the first-filed action, as it relates to the common claims between common defendants, was brought by *Whalen* in the Northern District of California. *See Whalen, et al., v. Epiq Systems, Inc., et al.*, No. 3:25-cv-4522 (N.D. Cal., May 28, 2025). *Whalen* was the first complaint to challenge the Settlement Administrator Defendants' conduct as court appointed fiduciaries and their conspiratorial conduct with Bank Defendants. *Whalen* was the first complaint to bring substantive Antitrust and RICO claims against both Settlement Administrators and Bank Defendants premised on interest rate kickbacks. The original complaint in *Baker* only brought state law negligence, fraud, unjust enrichment, and breach of fiduciary duty/implied contract claims against Angeion, Epiq, and JND. Those claims were solely premised on Administrator Defendants' ill-gotten gains from breakage digital payment kickbacks, which involved agreements with different entities: digital payment companies.

After the *Whalen* Complaint was filed, the *Baker* Plaintiffs filed an Amended Complaint alleging, for the first time, similar claims premised on Bank Defendants' "agree[ment] to split the interest earned on class action settlement deposits that otherwise would have been distributed to class members." *See* Amended Compl., *Baker v. Angeion Group LLC, et al.*, No. 25-cv-02079 (E.D. Pa., April 24, 2025), Dkt No. 27, ¶ 1. These newly-raised interest rate-based claims concern wholly separate conduct between different parties that do not relate back to the digital payment claims involving "digital payment companies." *See, e.g., Halo Elecs., Inc. v. Bel Fuse Inc.*, No. C-

07-06222 RMW, 2008 WL 1991094, at *3 (N.D. Cal. May 5, 2008). Only the interest-based kickbacks claims arising out of the conspiratorial conduct between Administrator Defendants and Bank Defendants are common across all five actions. *Whalen* was the first action to raise these common claims and is therefore the first-filed action for the purposes of MDL consolidation. *DocRX, Inc. v. InforMD, LLC,* No. CIV.A. 14-00486-KD-B, 2015 WL 3503170, at *3 (S.D. Ala. June 2, 2015) ("In the exercise of its discretion, a court may give priority to a later-filed action, notwithstanding the first-filed rule, where the balance of convenience tips in favor of the second forum or special circumstances are otherwise present."); *Lockheed Martin Corp. v. L-3 Commc'ns Corp.*, 405 F. Supp. 2d 1381, 1383 (N.D. Ga. 2005) (considering action that first brought "substantive" claims against common defendants was the first-filed).

***Third***, two of the Related Class Actions are already pending in the Northern District of California. Both *Whalen, et al., v. Epiq Systems, Inc., et al.*, No. 3:25-cv-4522 (N.D. Cal., May 28, 2025), the first-filed out of the Related Class Actions[10], and *Rieger v. Epiq Systems, Inc., et al.*, No. 3:25-cv-4793 (N.D. Cal., June 5, 2025) (the "California Actions") are currently before the same judge in the Northern District of California. Therefore, more cases are presently pending in the Northern District of California than any other district. *See In re MOVEit Customer Data Sec. Breach Litig.*, 699 F. Supp. 3d 1402, 1407 (J.P.M.L. 2023) ("We are persuaded that the District of Massachusetts is the appropriate transferee district for these cases. More cases are pending in this district than in any other district[.]"); *see also In re OpenAI, Inc., Copyright Infringement Litig.*, 776 F. Supp. 3d 1352, 1355 (J.P.M.L. 2025) (determining same when eight of twelve actions

---

[10] The first complaint to bring substantive Antitrust and RICO claims against both Settlement Administrators and Banks was *Whalen, et al., v. Epiq Systems, Inc., et al*., No. 3:25-cv-4522 (N.D. Cal., May 28, 2025). <u>After</u> *Whalen* was filed, *Baker* filed an Amended Complaint bringing the majority of the common claims against the common defendants.

17

already pending in one district); *In re: Schnuck Markets, Inc*., 978 F. Supp. 2d at 1381 (determining appropriate forum to centralize was transferee district that already had two related cases pending).

The California Actions have already been determined to be related and were transferred to Judge Jacqueline Scott Corley. The panel has previously transferred cases to Judge Corley for centralization and in so doing determined that she is "an experienced jurist" and were "confident w[ould] steer th[e] litigation on a prudent and expeditious course." *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II),* 730 F. Supp. 3d at 1374; *see also In re Fam. Dollar Stores, Inc., Pest Infestation Litig*., 607 F. Supp. 3d 1352, 1354 (J.P.M.L. 2022) ("Judge Sheryl H. Lipman, who presides over two of the actions at issue, is an experienced jurist, and has the willingness and ability to manage this litigation.").

**Fourth**, most of the named plaintiffs are based out of California and several defendants, including common defendants, have their principal place of business on the West Coast. Plaintiffs Monica Meiloaica, Chasom Brown, and Nicole Rieger are all domiciled in California. Four out of the nine defendants are based in the Ninth Circuit, more than any other region.[11] JND maintains its principal executive offices in Seattle, Washington; Blackhawk's principal place of business is in Pleasanton, California; Digital Settlement Technologies LLC is located in Santa Monica, California; and Western Alliance Bank maintains its principal executive offices in Phoenix, Arizona.[12] *In re: iPhone/iPad Application Consumer Priv. Litig.*, 802 F. Supp. 2d 1363, 1364

---

[11] Only Angeion, Kroll, and Tremendous are based in the Northeast.

[12] In their Motion, the *Baker* Plaintiffs focus on the Defendants' place of incorporation. While incorporation may have some minimal relevance, the Panel has repeatedly focused on the where a corporate defendant is *headquartered* when weighing where to centralize a case. *In re KeyBank Customer Data Sec. Breach Litig*., 655 F. Supp. 3d 1372, 1374 (J.P.M.L. 2023); *In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.,* 412 F. Supp. 3d 1361, 1363 (J.P.M.L. 2019); *In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig*., 325 F. Supp. 3d 1374, 1377 (J.P.M.L. 2018). This is because a company's headquarters is likely to have the evidence sought during discovery.

(J.P.M.L. 2011) ("Moreover, since several defendants are headquartered in that district, including common defendant Apple, it is likely that relevant documents and witnesses will be found there."). Therefore, the Northern District of California is the most appropriate forum for centralization.

## CONCLUSION

Plaintiffs respectfully requests that the Panel order the centralization of the Related Class Actions for consolidated or coordinated pretrial proceedings, but only with respect to the claims similar to the *Whalen* and *Tejon* claims, which arise from the *Whalen* and *Tejon* Plaintiffs' first-filed complaints, as well as any cases that may subsequently be filed asserting related or similar claims, to the Northern District of California before United States District Judge Jacqueline Scott Corley.

Date: September 5, 2025

Respectfully submitted,

By: /s/    *David Boies*
**BOIES SCHILLER FLEXNER LLP**
David Boies
333 Main Street
Armonk, NY 10504
Tel: (914) 749-8200
dboies@bsfllp.com

Adam R. Shaw
30 South Pearl Street,12th Floor
Albany, NY 12207
Tel.: (518) 694-4227
ashaw@bsfllp.com

James Lee
Augusto A. Cividini
100 SE 2nd St., 28th Floor
Miami, FL 33131
Tel.: (305) 539-8400
jlee@bsfllp.com
acividini@bsfllp.com

Mark C. Mao
Beko Reblitz-Richardson

44 Montgomery St., 41st Floor
San Francisco, CA 94104
Tel.: (415) 293-6800
mmao@bsfllp.com
brichardson@bsfllp.com

Alison L. Anderson
Samantha Parrish
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
Tel.: (213) 629-9040
alanderson@bsfllp.com
sparrish@bsfllp.com