**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: CLASS ACTION SETTLEMENT ADMINISTRATION LITIGATION | MDL Docket No. 3162 |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
MOTION TO TRANSFER AND CENTRALIZE THE RELATED ACTIONS TO THE
UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA FOR CONSOLIDATED OR COORDINATED PRETRIAL
PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407**

## <u>INTRODUCTION</u>

Plaintiffs Tyler Baker and Lauren Wolf (collectively the "Movants") in *Baker v. Angeion Group LLC et al*, 2:25-cv-02079-KBH (E.D. Pa.) respectfully submit their Reply to Plaintiffs' and Defendants' respective Responses to Movants' Motion to Transfer and Centralize the Related Actions to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1407 and Rule 7.2 of the Rules of Procedure of the Judicial Panel on Multi-District Litigation (the "MDL Motion").

The responses to the MDL Motion demonstrate broad support for transferring the five related Class Action Complaints to a single district, based on the substantial overlap of allegations and the similarity of legal claims against the same Defendants. Procedurally, all five actions are at the initial pleading stage, and no Defendant has answered or moved to dismiss any of the Complaints. Accordingly, now is an opportune time to centralize this litigation.

Importantly, each of the Defendants either supports transfer and consolidation or takes no position on the MDL. Defendants Angeion Group LLC ("Angeion"), Digital Settlement Technologies LLC ("DST"), Epiq Systems, Inc. ("Epiq"), The Huntington National Bank ("Huntington Bank"), JND Legal Administration ("JND"), and Western Alliance Bank ("Western Alliance") expressly endorse transferring and consolidating the related actions. *See* Dkt. # 22 at p. 1. The Defendants disagree with the Movants only to the extent that they would prefer that the actions be transferred to the Southern District of New York ("S.D.N.Y.") (the Movants' second choice of venue) rather than the Eastern District of Pennsylvania ("E.D. Pa.") (the Movants' first choice of venue). *See id*. Defendant Kroll Settlement Administration LLC ("KSA") has taken no position on the request for an MDL, but if the motion is granted, KSA would also support transferring the actions to the S.D.N.Y. *See* Dkt. # 21 at p. 1-2.

On the other hand, the Plaintiffs in *Whalen v. Epiq Systems, Inc.*, Case No. 3:25-cv-4522-JSC (N.D. Cal.); *Whalen v. Epiq Systems Inc.*, Case No. 1:25-cv-4499-PKC (S.D.N.Y.); *Tejon v. Epiq Systems, Inc.*, Case No. 1:25-cv-22453-KMW (S.D. Fla.); and *Rieger v. Epiq Systems, Inc.*, No. 3:25-cv-04793 (N.D. Cal.) (the "*Whalen* and *Rieger* Plaintiffs"), support consolidation only with respect to the allegations that Defendants Angeion, Epiq, JND, and Kroll (the "Administrator Defendants"), engaged in an anticompetitive scheme with Huntington Bank and Western Alliance (the "Bank Defendants"), to distribute illegal kickbacks and suppress payouts in class actions. The Plaintiffs in these actions suggest that the Northern District of California ("N.D. Cal.") would be an appropriate venue for these particular claims. However, the *Whalen* and *Rieger* Plaintiffs would have Movants separately litigate their claims about kickbacks from digital payments against the same Administrator Defendants and Defendants Tremendous LLC ("Tremendous"), Blackhawk Network Holdings ("Blackhawk"), and Digital Settlement Technologies ("DST"). Tellingly, none of the Defendants suggest, let alone support, this inefficient balkanization of the litigation.

For the reasons that follow, the Panel should reject the *Whalen* and *Rieger* Plaintiffs' proposal to bifurcate the litigation and instead transfer all claims in the five related actions to either the E.D. Pa. for purposes of consolidated or coordinated pretrial proceedings.

## RELEVANT FACTUAL BACKGROUND

The five related actions involve an industry-wide scheme involving electronic payments to injured plaintiffs in a class action settlement, in which Defendants allegedly skimmed millions of dollars from the plaintiffs' payouts, which ended up in the Defendants' coffers. As explained in a Forbes article, published on May 21, 2025,[1] attached as Exhibit "A," the "unused funds end up lining the pockets of the fin tech companies that issue the card (mainly gift card giant Blackhawk

---

[1] Jeff Kauflin, *How Private Equity-Owned Companies Quietly Pocket Class Action Payouts*, Forbes, May 21, 2025.

and New York-based startup Tremendous), the banks they partner with and the Administrator Defendants, the class action administration companies that award the contracts for the digital cards, who are the Defendants in each of the related cases. *See Forbes at* 2. As Mr. Kauflin further explained:

> The problem with digital prepaid cards, however, is that they're subject to few rules and little oversight. For example, the federal Card Act prohibits inactivity fees from kicking in before a normal gift card has gone unused for a full year, and some states have longer waiting periods or ban inactivity or "card maintenance" fees altogether. But those laws don't apply to the prepaid cards issued in litigation settlements.
>
> *    *    *
>
> Banks are involved in-and profit from-this problem too since they create the accounts in which the digital-card funds are held (until they're spent by consumers or swallowed up by fees).
>
> *    *    *
>
> Banks act as custodians for class action settlement money, regardless of whether it's distributed by check or electronic means.

*Id. at* 4, 9.

Thus, despite the *Whalen* and *Rieger* Plaintiffs protestations[2] to the contrary, these cases involve an interrelated scheme and each of the scheme's components, claims administrators, fintechs, and banks, are inseparable. Accordingly, the Panel should deny the *Whalen* and *Rieger* Plaintiffs' request to sever the "breakage" claims against the claims administrators and fintech defendants from those against the remaining defendants. Additionally, as is discussed further *infra*, the Panel should transfer and consolidate each of the related cases to the E.D. Pa. for coordinated proceedings.

---

[2] *See Whalen* and *Tejon* Plaintiffs' Joint Memorandum in Qualified Support of Baker Plaintiffs' Motion for Centralization Pursuant To 28 U.S.C. § 1407, Dkt. # 23, filed September 5, 2025, at 2-3, 5. *See also* Plaintiff Nicole Rieger's Response to Movant's Motion for Transfer, Dkt. # 24, filed September 6, 2025, at 1-2.

## ARGUMENT

### I.    Centralization of All Claims in All Five Related Class Actions is Warranted

Under 28 U.S.C. § 1407, transfer of actions to one district for coordinated or consolidated pretrial proceedings is appropriate where: (1) actions pending in different districts involve one or more common questions of fact and (2) the transfer of such actions will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions. 28 U.S.C. § 1407(a). As set forth in Movant's opening brief, these factors weigh heavily in favor of transfer and consolidation. Notably, the vast majority of Defendants agree that transfer to a single court is appropriate. *See In re Cap. One 360 Sav. Acct. Int. Fee Litig.*, 737 F. Supp. 3d 1359, 1360 (U.S. Jud. Pan. Mult. Lit. 2024) (centralization is appropriate where actions are nationwide class actions asserting similar claims).

Movant's Action and the Related Actions all allege that the Defendants participated in a manipulative and deceptive scheme to obtain millions of dollars in undisclosed compensation for serving as the court-approved settlement administrators in hundreds, if not thousands, of mass tort and class action lawsuits across the United States. Each of the five Related Actions allege the same or similar claims, including violation of the Sherman Act, § 1, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), §§ 1962(C), 1962(D) and 1964(C), common law fraud, breach of implied contract, breach of fiduciary duties, negligence, negligent misrepresentation, conspiracy, aiding and abetting, and unjust enrichment.

### A.    The Panel Should Deny the Whalen and Rieger Plaintiffs' Request to Sever the "Breakage" Claims from the Antitrust Claims

The Complaints in all five Related Actions share the same factual nexus, asserting nearly identical claims challenging Defendants' participation in the same purported relevant antitrust market. The Related Actions effectively seek the same monetary, declaratory, and injunctive relief

as Movants' First Amended Class Action Complaint on behalf of the virtually same proposed class. Each of the complaints alleges claims on behalf of three identical classes of Plaintiffs. *Cf. Baker v. Angeion Group LLC et al*, 2:25-cv-02079-KBH (E.D. Pa.) Dkt. # 27 at ¶ 177; *with Whalen et al. v. Epiq Systems, Inc.*, 3:25-cv-4522 (N.D. Cal., filed May 28, 2025), Dkt. # 1 at ¶ 103; *Tejon v. Epiq Systems, Inc.*, 25-cv-22453 (S.D. Fla., filed May 29, 2025) Dkt. # 1 at ¶ 101; *Whalen v. Epiq Systems Inc.*, 25-cv-4499 (S.D.N.Y., filed May 29, 2025) Dkt. # 2 at ¶ 101;[3] and *Rieger v. Epiq Systems, Inc.*, 3:25-cv-4793 (N.D. Cal., filed June 5, 2025) Dkt. # 1 at ¶ 103. Plaintiffs in each of the actions also allege the same or similar claims including violation of the Sherman Act, Section 1, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Sections 1962(C) 1962(D) and 1964(C), common law fraud, breach of implied contract, breach of fiduciary duties, negligence, negligent misrepresentation, conspiracy, aiding and abetting, and unjust enrichment.

When multiple actions pending in different judicial districts concern common questions of fact and law, the actions should be centralized in one district for pretrial proceedings if transfer would further "the convenience of parties and witnesses" and "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The JPML has repeatedly concluded that transfer is appropriate where, as here, putative class actions assert substantially identical claims and seek identical relief. *See*, *e.g.*, *In re Deere & Co. Repair Servs. Antitrust Litig.*, 607 F. Supp. 3d 1350, 1351 (U.S. Jud. Pan. Mult. Lit. 2022) (finding "putative class actions share factual issues arising from allegations that, through various anticompetitive practices, [defendant] has monopolized the

---

[3] The only distinction is that Ms. Whalen's California Complaint defines a state-based class on behalf of California residents, and in her Complaint filed in the S.D.N.Y. defines a state-based class on behalf of New York residents. Likewise, Mr. Tejon, a citizen of Florida, defines a state-based class on behalf of Florida residents.

market for repair and maintenance services."); *In re Acetaminophen - ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d 1372, 1374 (U.S. Jud. Pan. Mult. Lit. 2022) ("common factual core in these nearly identical actions far outweighs the plaintiff-specific differences" and "warrant[ed] centralization"); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (U.S. Jud. Pan. Mult. Lit. 2019) (Section 1407 "does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of … differing legal theories is not significant where, as here, the actions still arise from a common factual core") (cleaned up); *In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) ("All actions share factual questions relating to the existence, scope and effect of an alleged conspiracy to fix the price of cotton yarn in the United States and/or to allocate the U.S. cotton yarn market and customers. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel and the judiciary.").

As Defendants note, Movant's inclusion of additional allegations concerning breakage from digital payments distributed to class members does not weaken the case for consolidation and centralization. *See* Dkt. # 22 at p. 7 (citing *In re Marriott International, Inc., Customer Data Security Breach Litigation*, 363 F. Supp. 3d at 1374 (Section 1407 "does not require a complete identity of common factual issues or parties as a prerequisite to transfer, and the presence of … differing legal theories is not significant where, as here, the actions still arise from a common factual core") (cleaned up); *In re Acetaminophen - ASD/ADHD Products Liability Litigation*, 637 F. Supp. 3d at 1374 ("common factual core in these nearly identical actions far outweighs the plaintiff-specific differences" and "warrant[ed] centralization")).

Indeed, there is no genuine dispute that the five Related Actions involve a significant number of common events, defendants, and witnesses. The Related Actions also seek to represent essentially the same proposed class and all allege the same, or very similar, causes of action. Even assuming, *arguendo*, that the Panel determines that Movants' "breakage" claims are dissimilar from those asserted in the Whalen and Rieger Plaintiffs' claims, the Panel should, nevertheless, consolidate and centralize all of the Related Cases in a single district court. *See*, *e.g.*, *In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1346 (U.S. Jud. Pan. Mult. Lit. 2007) ("these [objecting] plaintiffs have made valid arguments, we nevertheless believe that centralization is both permissible and beneficial in these circumstances. Transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Regardless of any differences among the actions, all actions arise from the same factual milieu, raising common factual questions regarding the promotion and operation of the [defendant's] mare lease program.").

The cases cited by the *Whalen* and *Rieger* Plaintiffs as support for bifurcating the claims are factually distinct and lend no support to the argument that the "breakage" claims should be severed from the antitrust claims. In *In re: Mortg. Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370–71 (U.S. Jud. Pan. Mult. Lit. 2009), the Panel found that the unrelated claims, *i.e.*, those related to Fair Housing Act, 42 U.S.C. § 3601, *et seq*., and Fair Debt Collection Practices Act, 15 U.S.C. § 1601, *et seq*., were unrelated to and did "not share sufficient questions of fact with claims regarding the formation and operation of the MERS system." The MERS litigation involved a conspiracy to conceal from plaintiffs-borrowers the true identities of the actual owners of their mortgages. Clearly, the issues involving fair housing and fair debt collection practices are distinct and severable. That type of distinction is not presented here. Moreover, the *In re: Mortgage*

*Electronic Registration Systems (MERS) Litigation*, 659 F. Supp. 2d 1368 decision appears to be an outlier that has drawn criticism from the Ninth Circuit. *See Rollins v. Mortg. Elec. Registration Sys., Inc.*, 737 F.3d 1250, 1252 (9th Cir. 2013) ("'claim-splitting' in this case resulted in considerable confusion in the MDL court and for the parties. The dividing line between claims related and unrelated to the 'formation and/or operation of the MERS system' was, at best, murky."). Here, the Panel's determination in this MDL may cloud, rather than clarify, the issues should the Panel decide to sever the "breakage" claims.

Likewise, in *In re: Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 560 F. Supp. 2d 1362, 63–64 (U.S. Jud. Pan. Mult. Lit. 2008), the Panel found that "claims involving the *Davol Fixation device* do not share sufficient questions of fact with defective prescription medical device known as the *Composix Kugel Hernia Patch* (the Patch)—used to surgically repair soft-tissue defects." (emphasis added). Thus, the allegations in the *Kugel Mesh* matter are factually dissimilar and lend nothing to the Panel's analysis here.

Lastly, in *In re Aredia & Zometa Prods. Liab. Litig.*, 429 F. Supp. 2d 1371, 1372 (J.P.M.L. 2006), the Panel found that claims involving over-the-counter medications used for the prevention or treatment of osteoporosis were not similar and should be severed from claims involving prescription medications used in the treatment of cancer.

While the decisions in the *Kugel Mesh* and *Aredia & Zometa* cases were justified, that analysis does not translate to the claims asserted here. Rather, centralizing the Related Actions will prevent inconsistent pretrial rulings, eliminate duplicative discovery, and conserve party and judicial resources. *See*, *e.g.*, *In re OpenAI, Inc., Copyright Infringement Litig.*, 776 F. Supp. 3d 1352, 1354 (U.S. Jud. Pan. Mult. Lit. 2025) (Where "each action will involve overlapping, complex, and voluminous discovery … [c]entralization will eliminate duplicative discovery;

prevent inconsistent pretrial rulings, particularly as to class certification; and conserve the parties resources, their counsel, and the judiciary."); *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 669 F. Supp. 3d 1375, 1380 (U.S. Jud. Pan. Mult. Lit. 2023) (Fact that plaintiffs allege "additional sources of contamination is no obstacle to transfer."); *In re Taasera Licensing, LLC, Pat. Litig.*, 619 F. Supp. 3d 1352, 1353 (U.S. Jud. Pan. Mult. Lit. 2022) ("There are significant efficiencies to be gained, for both the parties and the judicial system, by having only one court oversee discovery …").

Accordingly, Movants submit that the Panel should deny the *Whalen* and *Rieger* Plaintiffs' request to sever the "breakage" claims.

## II.    The Panel Should Centralize All Five Related Actions in The Eastern District of Pennsylvania

Considering all the proposed forums, the E.D. Pa. offers the most appropriate forum with a clear geographic nexus that would further "the convenience of parties and witnesses[.]" *See* 28 U.S.C. § 1407(a). In addition to being blocks away from the U.S. headquarters for defendant Angeion and the location of the torts allegedly committed in this matter, E.D. Pa. also offers an experienced court with a long-standing history of managing MDLs, as well as the capacity and judicial resources to oversee this matter. *See* Dkt. # 1. The E.D. Pa. is also home to the first filed case to be consolidated, and this case encompasses *all* the relevant conspiracies alleged.[4] In addition to Angeion's headquarters, almost all Defendants have a significant presence in Philadelphia (*i.e.*, are headquartered, hold an office, and/or transact significant business, or are incorporated in Delaware – about 45 miles from Philadelphia and the Court), where witnesses and

---

[4] As noted above, the Whalen and Rieger Plaintiffs do not seek to consolidate all claims against all Defendants.

documents are likely to be located.[5] And to the extent that witnesses from Defendants' other locations are required, Philadelphia International Airport and train stations would render the necessary travel as efficient and easy as possible.

The other venues sought by Respondents are less suited than the E.D. Pa. and/or lack a nexus to this litigation. The *Whalen* and *Rieger* Plaintiffs seek only certain claims, not all the claims alleged in *Baker*, to be consolidated in the N.D. Cal. *See* Dkt. # 23. Defendants disagree. Dkt. # 22. However, the geographic center of gravity for this matter is found on the other side of the country—in the vicinity of Philadelphia. Indeed, ***none*** of the Defendants named by the *Whalen* and *Rieger* Plaintiffs are based in California.[6] It would require extensive air travel for nearly every single party and witness, which would only add to the cost and time involved in litigating this matter.[7] The N.D. Cal. lacks a nexus to this matter, and given the distance, it would be a highly inconvenient forum for the vast majority of parties and witnesses. Additionally, while the undersigned respects Judge Corley immensely, the statistics regarding the N.D. Cal. indicates that it would not be the most efficient district—indeed, the median time to trial in civil cases in the N.D. Cal. is longer than that of the E.D. Pa. by approximately 32 months.[8] These considerations

---

[5] Blackhawk is a Delaware corporation with an office in Pittsburgh, Pennsylvania; DST is a Delaware company; JND is a Delaware Limited Liability Company; Western Alliance is a Delaware corporation; and Epiq maintains an office in Philadelphia, Pennsylvania.

[6] Curiously, to support their argument that N.D. Cal. is the most convenient venue, the *Whalen* and *Rieger* Plaintiffs argue that the defendants, who are only named as defendants in the *Baker* Complaint, and whose claims they are not seeking to consolidate, are located in California.

[7] Defendant JND is headquartered in Seattle, Washington; Defendant Huntington is headquartered in Columbus, Ohio; Western Alliance is headquartered in Phoenix, Arizona; Defendant Epic is headquartered in New York, New York; Defendant Kroll is headquartered in New York.

[8] *See* U.S. District Courts – National Judicial Caseload Profile, at Table C-5—U.S. District Courts– Civil Federal Judicial Caseload Statistics (March 31, 2025), *available at* https://www.uscourts.gov/data-news/data-tables/2025/03/31/federal-judicial-caseload-statistics/c-5 (indicating that median time to trial in a civil case is 45.9 months in the N.D. Cal. and 61 months in the S.D.N.Y., while it is merely 14 months in the E.D. Pa.) (last visited September 9, 2025).

should weigh against selecting the N.D. Cal.

Defendants seek to consolidate in the S.D.N.Y. *See* Dkt. # 22. The S.D.N.Y. may not offer the most efficient forum for this matter, considering its current caseload and substantial backlog. Presently, the S.D.N.Y. has fourteen MDLs pending before it, and many of those MDLs have a significant number of cases still pending.[9] And Honorable P. Kevin Castel, for whom Movants have deep respect, has nine of the thirty-nine cases in the MDL 3010 (*IN RE: Google Digital Advertising Antitrust Litigation*) pending before him.[10] Additionally, the median time to trial in civil cases in the S.D.N.Y. is 47 months longer than in the E.D. Pa.[11] While the S.D.N.Y. may be relatively convenient (particularly as compared to the other forums proposed), it may not be the best choice to "promote the just and efficient conduct of [these] actions." 28 U.S.C. § 1407.

As such, the docket conditions in the E.D. Pa. are more favorable: the E.D. Pa. has fewer pending cases, and, of those, the civil cases reach a disposition more quickly than in the other jurisdictions. Finally, Honorable Kelley Brisbon Hodge is exceedingly qualified to oversee the necessary consolidated proceeding, and Movants are confident they will steer this litigation on a prudent course. *See* Dkt. # 1.

## CONCLUSION

For the foregoing reasons, the Class Action Plaintiffs respectfully request that the Panel grant this Motion and transfer the Related Actions to Judge Hodge in the Eastern District of Pennsylvania for consolidated or coordinated pretrial proceedings.

---

[9] *See, e.g.*, U.S. J.P.M.L., MDL Statistic Report – Distribution of Pending MDLs by District (Sept. 2, 2025), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-2-2025.pdf (indicating that 14 of the MDLs in the Southern District of New York have more than half of the cases historically filed still pending as of September 2025) (last visited Sept. 9, 2025).
[10] *Id.*
[11] *See supra*, note 5.

Date: September 12, 2025

Respectfully Submitted,

*/s / Liberato P. Verderame*
Liberato P. Verderame (PA ID # 80279)
Eric Lechtzin (PA ID # 62096)
Marc H. Edelson (PA ID # 51834)
EDELSON LECHTZIN LLP
411 S. State Street, Suite N-300
Newtown, PA 18940
Telephone: (215) 867-2399
Email: lverderame@edelson-law.com
Email: elechtzin@edelson-law.com
Email: medelson@edelson-law.com

Christopher A. Seeger
SEEGER WEISS LLP
55 Challenger Road, Suite 600
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
Email: cseeger@seegerweiss.com

Shauna Itri (PA ID # 201611)
SEEGER WEISS LLP
325 Chestnut St., Suite 917
Philadelphia, PA 19106
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
Email: sitri@seegerweiss.com

*Attorneys for Plaintiffs and the*
*Proposed Class*